LUCRETIA WADE and Husband *v.* THE NEW ORLEANS CA-NAL AND BANKING COMPANY.

The destruction of a bank-note by fire, or otherwise, does not destroy the obligation of the bank to pay.

Where in an action against a bank for the amount of notes alleged to have been destroyed by a fire which consumed the residence of plaintiff, the evidence leaves no doubt of the destruction of the notes, plaintiff will be entitled to a judgment for their amount on the condition of executing a bond, with surety, to indemnify the bank, in case it should afterwards appear that the notes were not so des-troyed.

Wade and Husband v. The New Orleans Canal and Banking Company.

APPEAL from the District Court of the First District. *Bucha-nan*, J.

*C. M. Jones* and *L. Pierce*, for the plaintiffs.

*F. B. Conrad*, for the appellants.

BULLARD, J. This is an action against the Canal Bank, in which the plaintiffs seek to recover two thousand and fifty dollars, the amount of twenty *one hundred dollar notes*, and one *fifty dollar note* of the defendants, which, it is alleged, were consumed by the fire which destroyed the dwelling house and furniture of the plaintiffs, in the month of July, 1842. Judgment was rendered in the Commercial Court in favor of the plaintiffs, and the bank has appealed.

It is incumbent on the plaintiffs, in a case like the present, to furnish very strong and conclusive evidence of the destruction of the bank notes by fire. The only defect in the evidence is, the want of identity, by numbers and dates. Is that defect supplied by such strong concurrent circumstances as to leave no reasonable doubt of the fact alleged? If so, equity forbids that the bank should profit by the destruction of their notes, at the expense of the plaintiffs.

It is clearly shown, that Mrs. Wade received, in March and April, 1842, from the Canal Bank, the amount claimed by her, on two checks, the one for $1000, and the other for $1050. It was paid to her in bank notes of the Canal Bank. When the run took place upon the bank, she endeavored to get the specie, but the teller told her the sum was so large she ought to wait till the next day. The next day, June 1, 1842, the bank suspended specie payments. She afterwards consulted an officer of the bank as to what she should do—whether she should part with her money at a discount, or keep it. The amount is shown to have been in her possession immediately preceding the fire. It was kept in her *armoire* in her sleeping room, together with some gold and silver and a gold watch, and was placed in a silver basin. After the fire, a mass of melted silver and gold was recovered from the ashes immediately under the room, which was entirely destroyed with all the furniture, and Mrs. Wade narrowly escaped by mounting upon the roof of the house, and was much injured by the fire. The fire broke out in the kitchen, under the

room in which Mrs. Wade slept with two children and some servants, about day-light in the morning. The whole house was consumed, together with all the furniture, except some in the parlor.

Mrs. Wade was very much injured, and was confined several weeks with her burns. As soon after the fire as her physicians would allow her to see visitors, she stated to a person who called on her, and who was examined as a witness, that she had lost all that she had; that she had lost a gold watch which belonged to her daughter; and she spoke of the $2050 in notes of the Canal Bank, and other bank notes which had been consumed. The witness made a memorandum of what she had lost, and told her he had no doubt the bank would pay her. Among the ashes was found not only gold and silver that was melted, but $400 or $500 in specie, which was not melted, and that directly under the place where the plaintiff's sleeping-room was situated. It is further shown, that there is yet in circulation of the same issue about $16,000 in $100 notes, which were put in circulation by the bank, previously to the fire.

A critical examination of all the evidence given on the trial has not enabled us to detect a single circumstance tending to create any suspicion. It is quite conclusive, that the fire which consumed the house, destroyed the bank notes, as alleged in the petition, and that it is impossible they can ever be presented for payment to the bank. It would even have created suspicion, if the plaintiff had retained, and been prepared to prove by a witness, the numbers, letters and dates of the identical bills kept by her in her *armoire*, and alleged to have been destroyed. Such precautions are quite unusual. Her retaining the notes so long is accounted for by the fact, that they were at that time at a heavy discount, and that she had been advised by an officer of the bank not to submit to a sacrifice. Three days before the fire, she had offered to lend the money for two or three months to be re-paid in good money. The plaintiff was ruled to give bond, with surety, to indemnify the bank, in case it should appear hereafter that the notes were not destroyed; and this could only be shown by the fact, that when the old issue shall be called in, the whole shall be presented for payment. The bank is thus amply protected from any future loss.

The destruction of a bank note by fire, or otherwise, does not destroy the obligation of the bank to pay. Every note it has put in circulation is, in contemplation of law, still due by the bank. The difficulty consists in procuring such clear and satisfactory evidence of the loss, as to place the bank beyond the reach of ultimate loss or imposition. In the present case, the evidence leaves no doubt on our minds of the total destruction of the notes, as set forth in the petition.

*Judgment affirmed.*