charges refused, are embraced in others which were given; and it was not error to decline to repeat them.

For the errors herein indicated, the judgment is reversed, and cause remanded for a *scire facias*.

---

## ELLEN E. GORDON et al. *v.* A. B. MANNING.

1. RECITALS IN A DEED—PRESUMPTIONS—CONSTRUCTIVE NOTICE—VENDOR'S LIEN.—M. sold land to Mrs. G. & B. for $1,600, part in cash and part on credit, and made a deed for the same to vendees, reciting that "the consideration money has been paid in hand," and which deed was duly recorded. B. subsequently conveyed to T., who conveyed to W. W. is chargeable with constructive notice of the deed to Mrs. G. & B., and upon examining it, might well infer that the consideration money had all been paid, and that, hence, there was no subsisting vendor's lien in favor of M., and without further proof would hold the land discharged of the lien.

2. RECITALS IN DEED NOT CONCLUSIVE.—But such recital in the deed is not conclusive upon the grantor so as to preclude evidence that the whole consideration had not in fact been paid at the time of sale, and if he can fix the sub-vendee with notice of this fact, at the time of his purchase, the vendor's lien subsists and will bind the land for the original purchase money.

3. JOINT OWNERSHIP—EACH MOIETY FIRST LIABLE FOR ITS OWN SPECIFIC LIEN.—But whether the moiety of the land derived by W. from B., through T., would be liable for the portion of the purchase money, assumed to be paid by Mrs. G., although he might have had notice, *quære*. Equity, it would seem, ought first to exhaust the land conveyed to Mrs. G., for any part of the price assumed by her, before resorting to the moiety bought by B., and through him derived by W.

4. MARRIED WOMEN—INABILITY TO CONTRACT DEBTS—LIMITATION OF LIABILITY OF HERSELF OR HER ESTATE.—A married woman may take property by deed of conveyance, purchased by her on a credit, and the same shall be her separate property; but she cannot so contract as to put in hazard her separate estate, and pledge it herself for payment. And although she may not be sued at law to enforce the payment of the price, she will not be permitted to refuse payment, and to retain the land; and equity will, upon such refusal, subject the land to the payment of the purchase money; but should the sale of the land not satisfy the debt, neither the *feme covert,* nor her separate estate, are further liable either at law or in equity.

5. LOSS OF PAPER—SUFFICIENCY OF PROOF.—Where a witness testifies that the note in question was given for land, and belonged to his father, that the note, with other papers of his father, was given to him to examine, and report the contents to his father who could not read writing well, that subsequently those papers with the note, had been lost or mislaid by either himself or his father, he could not say which, and cannot be found—that he tried to find them but could not. *Held:* To be sufficient proof of the loss of the note.

LOST NOTE—INDEMNITY AGAINST.—Although Mrs. G. if under no liability on said note, her covertue being a complete defense thereto, which she can plead as well

against a remote holder, as against the payee, yet, inasmuch as she may be subjected to a suit thereon by some casual finder, and incur costs in making defense, she has a right to be indemnified against all costs, damages, etc., to which she may be exposed.

Appeal from the chancery court of Leake county.  CAMP-BELL, J.

The case is fully stated in the opinion of the court.

Appellants assign the following errors:

1st. The court below erred in decreeing relief against appellant, Mrs. Gordon. Her plea of coverture was a valid defense to said action, and was fully sustained by the proofs.

2d. The note of Mrs. Gordon, made during coverture, was void, and hence could not become the basis of a decree against her. If the note was valid at all, and was only so, as to her co-purchaser of the land, Bilbo, as to whom the suit was dismissed.

3d. The proof, as to the loss of the note, was not sufficient to entitle the appellee to relief.

4th. The court erred in decreeing relief, without requiring the appellee to indemnify the appellant, Mrs. Gordon, against said note, especially so, when the same was demanded by her in her answer.

5th. The decree is final as to the appellant, Mrs. Gordon, but makes no disposition of said cause as to the appellant, Williams.

*Eads & Huie*, for appellants.

The first and second errors assigned may be properly considered together, for the latter is but a consequence of the former. The statute of this state (Code, 336, art. 25) defines and specifies the contracts, which the *feme covert* can make, and she can bind herself personally only by such contracts; and when sued thereon, it is necessary for the plaintiff to bring his case within the specifications of the statute, by proper and appropriate averments in his declaration; and failing to do so, is fatal to his suit, when the objection is properly urged. See S. & M., 490; 41 Miss., 112. This rule is the same, or equally applies, whether the suit is an ordi-

nary action at law for the collection of a debt, or a suit to enforce the specific performance of her contract. In either case, the contract must be such as she is authorized in law to make.

The inquiry now presenting itself for solution, is whether the contract, disclosed in the pleadings and proofs, is such as appellant, Mrs. Gordon, at the time of its execution, had the power legally to make. The decree rendered in this case requires Mrs. Gordon, in the way of specific performance, to pay to the appellee a certain sum of money, being the balance due on said contract, within a given time; and in default of such payment, then certain property is to be sold, and the sum of money adjudged to be due and owing by appellant to appellee, is thereby to be paid. Now if the contract thus to be enforced is not such as Mrs. Gordon had the power or authority in law to make, then there is no legal obligation resting on her, by virtue of such contract, to make the payment adjudged against her; yet the decree of the court finds her with this liability to pay, and assumes to legalize what is in itself illegal, and to create a liability to make the payment of money, where there is no obligation whatever in law to make such payment.

Suppose she make default in the required payment, and the property designated in the decree is sold, the proceeds thereof fail to discharge the amount adjudged to be due and owing; then Mrs. Gordon is to be held liable for the deficit, and that, too, as *res adjudicata;* and her separate estate, in case she had such, will be resorted to for the deficiency; and thus the statute, "for the protection of the rights of married women," fails in the objects contemplated in its passage. The contract as to Mrs. Gordon is void. See 7 S. & M., 64; ib., 68, 41 Miss., 460; ib., 112.

Under the statute above mentioned, the wife in the case at bar had no power to make the purchase, and thereby to create a legal obligation binding herself to pay the sum specified. The contract was made by her, without the sanction of the law; hence, none of the incidents of a legal con-

tract could possibly attach to the purchase. Where the sale is void, the vendor has no lien. On this point, see 41 Miss., 460.

But while the purchase was void as to Mrs. Gordon, was it not valid and binding as to her co-purchaser, Abel H. Bilbo? And if so, the appellee could have enforced the claim against him, although he had no right of action against Mrs. Gordon, but he dismissed the suit as to him for some reason not disclosed by the record.

The third ground of error relied on is, that the proof as to the loss of the note is not sufficient. It is not shown that proper search was made to find the original. This is required. See 1 Story's Eq. Jur., § 85; Story's Eq. Pl., § 378.

The fourth error relied on is, that the court decreed relief, without requiring the appellee to indemnify the appellants. This was demanded in the pleadings, and should have been decreed. See 7 S. & M., 325; 1 S. & M. Ch. R., 433.

The fifth and last ground of error, is the failure of the court to dispose of said cause as to the appellant, Williams. This should have been done.

SIMRALL, J. :

The record shows that the complainant, Anderson B. Manning, sold and conveyed to Ellen E. Gordon and A. H. Bilbo, a tract of land for $1,600. That Mrs. Gordon, in part payment for the land, gave her note to the complainant for $400, upon which a balance is still due. Subsequently Bilbo sold and conveyed his moiety of the land to George W. Thompson, who conveyed the same to Williams. The deed from Bilbo to Thompson is dated June 13, 1863. The date of the deed from Thompson to Williams is October 1, 1864.

Williams defends against the vendor's lien, arising upon the sale by Manning to Mrs. Gordon and Bilbo, on the fact that he is an innocent purchaser. The deed from Manning to Mrs. Gordon and Bilbo, recites that the consideration money has been paid in hand. This recital is not conclu-sive upon the grantor, so as to preclude evidence that the

purchase money was in whole or in part on a credit, but notice must be brought home to a sub-purchaser, at or be-- fore his purchase and payment, that the price is unpaid, before the land would be chargeable with the vendor's lein, as against him. For the deed, so far from disclosing that the price, or any part was unpaid, would induce the belief that it had been paid down at the time of sale. This deed was filed for record July 18, 1863.

Williams is chargeable with constructive notice of this deed. When he examined the records, as they affected this title, the 1st October, 1864, the date of his purchase, as he may be supposed to have done, he might well infer, from the recital in the deed from the complainant to Mrs. Gordon and Bilbo, "that the price of $1,600 had been paid in hand," and, therefore, there was nothing due, and no incumbrance on the land. There is an absence of proof to charge him with notice of complainant's equity and his defense has been sustained. But it may well be doubted whether the moiety of the land owned by him would be liable, for the portion of the purchase money assumed to be paid by Mrs. Gordon, although he might have had notice. Equity, it would seem, ought first to exhaust the land conveyed to her, for any part of the price agreed to have been paid by her, before resorting to the moiety, bought by Bilbo, and through him derived to Williams. This point is barely suggested, not proposed for discussion and decision.

It is contended on behalf of Mrs. Gordon, that the note for $400, which she executed to the complainant, is void, because of her coverture; this being a contract which she was not authorized by law to make. But a married woman may acquire property by "will, descent, distribution, and of conveyance," etc., and property thus accruing to her, or "otherwise" (in any other mode), shall be "her separate property." Code, 335, art. 23. To say that a *feme covert* cannot take property, by a "deed of conveyance, would be to fly in the very face of the statute. To hold that she can purchase, on credit, so as to put in hazard her separate

estate, and pledge it and herself for payment, would conflict with Code, 336, art. 24, which authorizes a purchase of real or personal property " with her own money." To permit a married woman to retain property bought on credit, because she could not bind herself by a promise to pay for it, would shock the instincts of justice, as testified to by every man's conscience.

In former adjudications not yet reported, we have held that the *feme covert* is not liable in a suit at law, upon a note or promise given for property bought on credit; but that she cannot decline to pay and at the same time keep the property; whilst she is forbidden to incur this sort of liability, and cannot put in hazard her separate estate, she must either pay the money or restore the property, or a court of chancery will follow the property and appropriate it to the debt. And in doing this, there is manifest propriety and justice. This case serves as the example. The price of the moiety of this land to Mrs. Gordon, was eight hundred dollars. Of this sum, she has paid all except about one hundred and fifty dollars. If the complainant is permitted to subject the land to this balance, she would be entitled to receive the surplus, after satisfying the complainant.

If the respective rights of the parties were to be worked out on the theory of a rescission, the complainant would be entitled to an account of the rents and annual value of the premises, to be credited by the payments made by Mrs. Gordon on the land. But Mrs. Gordon has not applied, by cross-bill, for a rescission, and that view of the subject, or her claims and equities under it, do not arise. We are satisfied that the complainant is entitled to a sale of the land, if Mrs. Gordon does not pay the balance of the debt. We are further of the opinion that if, upon sale of the land, it should not satisfy the debt, Mrs. Gordon is no further liable, nor is her separate estate, on account of this indebtedness, either at law or in a court of equity.

3d. Is the proof sufficient of the loss of the note, without collecting the evidence on the subject? We think it is enough to convince that the note has been lost.

· 4th. Is the defendant, Mrs. Gordon, entitled to indemnity?

If Mrs. Gordon, by the loss of the note, is exposed to danger, at the suit of any person who may find the note, and hereafter sue upon it, then she ought to have a surety. Our statute has most materially modified the law merchant, as to the effects and consequences of the negotiation of commercial paper. The most material part is, that Mrs. Gordon can make the same defense against this note, in a suit, by a remote holder, as she could against the complainant, the payee. We have seen that her coverture is a complete defense—that there is no legal responsibility on the note. There can be no risk, then, that she may be compelled to pay it. But, inasmuch as she may be subjected to suit, by some casual finder of the paper, and incur costs in making defense, she ought to be indemnified against all costs, damages, etc., to which she may be exposed.

Whilst affirming the decree, we direct, that before the complainant shall proceed to the execution of the same, the chancery court require of the complainant a bond, with security, indemnifying the defendant, Mrs. Gordon, against costs and damages that may be incurred in any suit that may be brought on the note.