J. W. FISHER v. T. H. WEBB.

*Justices' Jurisdiction—Equitable Power.*

1. A justice of the peace has jurisdiction to try an action upon a lost note wherein a sum less than two hundred dollars is demanded, and is competent to exercise the power of requiring in such case the indemnity of the defendant.

2. The equitable power of the superior court and the courts of justices of the peace, and its exercise under the provisions of the constitution, discussed by RUFFIN, J.

(*Cotton* v. *Beasley*, 2 Murp. 259; *Allen* v. *Bank*, 1 Dev. & Bat. Eq., 3; *Fisher* v. *Carroll*, 6 Ired., 485; *Chaney* v. *Baldwin*, 1 Jones, 78; *Murphy* v. *McNeill*, 82 N. C., 221, cited and approved.)

CIVIL ACTION tried at August Special Term, 1880, of ROWAN Superior Court, before *McKoy, J.*

Verdict and judgment for plaintiff, appeal by defendant.

*Mr. John S. Henderson,* for plaintiff.

*Messrs. W. H. Bailey, Walter R. Henry* and *J. M. McCorkle,* for defendant.

RUFFIN, J. It is needless to make any statement of the facts of the case as it was intended to present and in fact does present for our consideration the single question whether the court of a justice of the peace can entertain an action on a lost note for a sum less than two hundred dollars, the defendant who is the appellant insisting that such a court being strictly one of law, as distinguished from a court of equity, no such jurisdiction attaches to it.

It has rarely happened in the history of jurisprudence that any one question has given rise to so many conflicting and contradictory decisions by courts as this one, touching the competency of courts of law to determine actions based upon lost notes and other evidences of debt, and such conflicts are not confined to the decisions of different courts,

but are very often to be found in those rendered by the same tribunals at different periods, and such is the uncertainty pervading them that it is absolutely impossible to extract from them any general principle or rule.

Seeing then the difficulties in which other courts have become involved by allowing their decisions in regard to the point to fluctuate, we are the more disposed to adhere rigidly to those principles which were enunciated by this court when the question was first presented for its consideration, and by a recurrence to which its decisions have at all times been kept uniform and consistent.

The first case upon the point was *Cotton* v. *Beasley*, 2 Murp., 259, decided in 1813, in which it was determined that a court of law was competent to try such a cause, provided the plaintiff could make proof of the loss of the instrument sued on, by a disinterested witness, but otherwise not. And the reason assigned was, that, because of the danger to which the defendant would be exposed in case the plaintiff were allowed to testify to the loss of the instrument, while he himself was excluded from showing its payment, or other defence, by his oath, the law excepted the case from the *general rule* which allowed parties, though incompetent on the trial, to prove by their own affidavits the loss of papers as preliminary or auxiliary matters; and having deprived the plaintiff of this privilege, in order that he might not be remediless, it allowed him to appeal to a court of equity for its aid. In delivering the opinion of the court as to the competency of the plaintiff at law to prove the loss, Judge HALL recognizes the general rule, and does not hesitate to declare that the plaintiff should have the benefit of it, if without the aid of his own testimony he could get no relief. But he observes "that in such a case a party has a remedy in the court of equity where he will be at liberty to swear to the loss and the defendant to make any answer he can upon oath;" and again he says,

"it seems not to be right that the plaintiff shall be permitted to become a witness at law and not the defendant. Suppose the plaintiff swears at law that he has lost the bond, the defendant will not be permitted to swear that he has paid it, taken it up and destroyed it; the parties ought to stand on equal grounds. In a court of equity they will both be heard upon oath. *The plaintiff can require no more than that he may proceed at law, if he can make out the loss of the bond by disinterested witnesses.*"

The point as to the jurisdiction of the law courts was next discussed in the case of *Allen* v. *State Bank*, 1 Dev. & Bat. Eq., 3, decided in 1834, where Judge GASTON delivered the opinion of the court. After commenting on the diversities to be found in many of the decisions and the repugnancies existing in those of the courts of England, and being perhaps more or less influenced thereby, he admits that it was still an unsettled question and declares it to be one of so much consequence that the court should *weigh* it well in all its bearings and not decide it until it should become necessary, by its being the direct point involved in a case—which he held it not to be in the one then under consideration : for however it might be as to the jurisdiction of a court of law there could be no question, he declares, as to the jurisdiction of a court of equity in such case, growing out of its peculiar power to relieve against accident and mistake.

The point was next considered in the case of *Fisher* v. *Carroll*, 6 Ired., 485, and from the labor there bestowed upon it and the care to explain why and when the plaintiff was forced to seek the aid of a court of equity and why that aid was given him, and to correct even certain *dicta* of some of the judges in regard to it, it is plain to be seen that the court then felt that the time had come when a *decision* was necessary, and therefore they did what Judge GASTON said should be done, weighed well the point with all its bearings and consequences, so as to reach a safe judgment which

might be accepted as its final settlement by the court.   Judge PEARSON, who wrote the opinion of the court, says that the fact that equity requires slighter proof of the loss of the instrument is the *main reason* to induce the plaintiff to sue in that court, and it is that too which distinguishes its mode of proceeding from that of a court of law, where strict and competent proof of the loss must be made ; that ordinarily, the loss of a deed or other paper may be proved in a court of law by the oath of a party so as to let in secondary evidence of its execution and contents, " and the only reason why the same principle is not followed in those courts in reference to lost notes is the want of power to require an indemnity as a *condition* to the judgment," and he expressly declares that " if the party *can prove* the loss, it is *better for him to sue at law.*" .And it is clear that he means it to be better not merely for the party to the action, but for the court and the country ; for he adds " that the mode of trying facts at law by the examination of the witnesses in the presence of a jury is preferable to the mode of trial in a court of equity, particularly when the very defective manner of taking depositions is considered."

The only subsequent case in which the court has recurred to the point is that of *Chancy* v. *Baldwin*, 1 Jones, 78.   This was an action on a lost note begun by a warrant before a justice of the peace and taken by appeal to the superior court, where on the trial the plaintiff offered to prove by his own oath the loss of the instrument which was admitted to be a negotiable one, and being rejected as incompetent appealed to this court.   The competency of the party to testify was the only point presented in the case and Judge PEARSON, who again delivered the opinion of the court, discussed it at considerable length and after calling attention to the hazard to which the defendant might be exposed in case the note should be afterwards found in the hands of an endorsee[1] declares, " that no defendant should be put in such a pre-

dicament *upon the mere oath of a plaintiff;"* and therefore it was held that the party was properly excluded as a witness. But why did that very able judge, always so astute to discern the point that lay nearest to the root of a case, discuss the question as to the competency of the witness at all, and make his decision turn upon it, if he could have had a doubt in his mind as to the jurisdiction, over the subject matter, of the justice before whom the action began? We will look in vain throughout the entire case for the slightest intimation, proceeding either from himself or the court, looking to any such want of jurisdiction in that tribunal. It is true that in the course of his opinion, the judge does go on to state the reason why the court of equity will allow the party to testify while a court of law will not, to be because that court can impose a condition upon the plaintiff of giving an indemnity to the defendant which the other could not; but that is spoken of as a power to be exercised by the court of equity, and not at all as the source or even an element of its jurisdiction over the cause.

From the foregoing decisions we deduce the following principles: That a court of law at all times had jurisdiction over the subject matter of a lost note; that it would not allow the plaintiff to testify even as to the preliminary matter of its loss because the defendant could not be heard to contradict or explain; that a court of equity took jurisdiction because of the accident, it being its peculiar province to relieve in such a contingency; that having the parties before it, it would hear both, and if deemed necessary, would compel the plaintiff to indemnify the defendant.

As the only obstacle in the way of such a plaintiff having certain and complete relief in a court of law grew out of the incompetency of the parties to testify for themselves, it would seem to follow, necessarily, that it must have been removed when that incompetency was put an end to by a statute that annulled almost every restriction upon their

right thus to testify; and it being conceded that a justice's court is a court of law, it must have the right to entertain an action on a lost instrument, unless there be something peculiar in its constitution to prevent. The defendant says that it should not be permitted to do so because of the fact that it lacks the power to exact from the plaintiff a bond for his indemnity against possible loss; but to this it may be answered that just the same lack of power was said to have existed in the law courts under the old system, and yet as we have just seen, they were allowed in many instances to entertain and determine such causes. But supposing that it might once have been a valid objection, we hold that an end has been put to it under the court system established by the present constitution. The power exercised by the court of equity, under our old system, of requiring indemnities for defendants when sued upon lost instruments, had nothing to do with the jurisdiction of that court. It neither originated nor enlarged it, but was simply an exercise of a power which it had over all its suitors and could exert whenever necessary in any case that was brought before it. When, then, the constitution abolished all distinctions between actions at law and suits in equity and declared that there should be but one form of action to be denominated a " civil action," and at the same time gave to the justices the exclusive jurisdiction of " civil actions " founded on contract wherein the sum demanded shall not exceed two hundred dollars, it must have intended to confer upon them every power essential to a proper exercise of that jurisdiction. There is no clause of the constitution, neither is there any statute, which bestows upon the superior courts as now constituted the powers of the old courts of equity, any more than upon the justices' courts. They are given alike to both, to be used within their respective spheres, and just so far as is necessary to the proper discharge of their several functions.

4

We hold, therefore, that in an action founded on a lost note wherein a less sum than two hundred dollars is demanded, the justice's court has exactly the same incidental power to require an indemnity for the defendant that the superior court would have in a like action for a larger amount. If this be not so, then is that power conferred upon no court, for as the jurisdiction of the justice to the extent of its limit is *exclusive*, the superior court and no other court can entertain *any* action to enforce a contract for less than two hundred dollars.

To avoid a misunderstanding, we repeat, we do not understand that in this change of systems, any portion of the *jurisdiction* of a court of equity has been apportioned to the justice's court, so as to enable it to try any action, however small the amount involved and though incidentally connected with a contract which was heretofore solely cognizable in a court of equity. And as an illustration of our meaning, we refer to the case of *Murphy* v. *McNeill*, 82 N. C., 221, in which it was held that the court of a justice of the peace could not entertain an action to foreclose a mortgage given to secure a debt less than two hundred dollars, the reason assigned being that such an action was not founded upon the contract *merely*, but upon an equity to have the premises sold, growing out of the relation in which the parties stood towards each other. So too, an action upon the contract of a married woman appears to us at present to be another fit illustration of our meaning. Inasmuch as she is incapable of contracting a *debt* so as to subject her to a judgment *in personam*, and can only contract so as to charge her separate property and thereby make it subject to a judgment *in rem*, it was formerly held that such an action was strictly cognizable in a court of equity ; and it would seem now to be outside of the jurisdiction of a justice. But in the action before us now there is nothing to take it out of the general rule. It is founded on the con-

'tract and is for its direct enforcement, and we hold that it was properly begun in a justice's court and indeed could not have been properly brought elsewhere.

No error. Judgment affirmed.