## FIRST NAT. BANK OF DENVER v. WILDER.

(Circuit Court of Appeals, Eighth Circuit. October 8, 1900.)

### No. 1,341.

1. LOST INSTRUMENTS—ACTION TO RECOVER—INDEMNITY.

   A court of law—especially one which is vested with jurisdiction both at law and in equity—has power to require a plaintiff to give a bond of indemnity as a condition precedent to a recovery in an action brought therein on a lost negotiable instrument.

2. SAME.

   The payee of a negotiable instrument, who claims to have lost the same before maturity, but that it had not been indorsed, should not be allowed

to recover thereon against the maker without giving reasonable indemnity, unless the evidence that the paper has been actually destroyed is so cogent that there is practically no risk of its reappearance. A finding of the jury in such an action that the instrument was not negotiated, but was lost while unindorsed, is not in itself a ground for dispensing with the requirement of indemnity, since it would not be available to the maker as a defense against an action by a third person who produced the instrument properly indorsed.

In Error to the Circuit Court of the United States for the District of Colorado.

Charles J. Hughes, Jr. (A. Moore Berry, on the brief), for plaintiff in error.

Lucius M. Cuthbert (Henry T. Rogers and Daniel B. Ellis, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. The case presented for decision is as follows: George W. Wilder, the defendant in error, on November 19, 1898, brought an action against the First National Bank of Denver, the plaintiff in error, to recover the amount due to him on two certificates of deposit (one for $500, and the other for $3,000) which were issued to him as payee, by the bank, on or about December 1, 1897. Each of the certificates, by its terms, was "payable in current funds to the order of self [that is, the payee, George W. Wilder] on the return of this certificate properly indorsed." The plaintiff alleged that he had never indorsed or transferred the certificates to any one; that on or about March 4, 1898, he had lost them by their being taken from his possession without his consent; that he had immediately informed the bank of the loss, and subsequently, in September, 1898, had demanded payment of the certificates, which was refused. The bank admitted the issuance of the certificates and their nonpayment, giving as an excuse for its refusal to pay them when payment was demanded that the certificates were not at the time produced by the payee, that he made no tender of indemnity on the occasion of the demand for payment or subsequently, and that it had no sufficient information on which to base a belief whether the certificates were lost or stolen, as the plaintiff alleged, or whether, if lost or stolen, they were at the time unindorsed by the payee.

Concerning the testimony adduced at the trial, which was before a jury, it will be sufficient for present purposes to say that the plaintiff testified, in substance, that on January 5, 1898, he went from Tacoma, Wash., to Skagway, in Alaska, landing there on the 10th of January, 1898; that he carried the certificates in a belt which he wore about his body; that he took up his abode at Skagway in a small hotel; that on the night of March 3, 1898, he took off his belt, which contained the certificates, some gold, and a diamond, and laid the same on one side of his bed, and went to sleep; that, when he dressed the next morning, through oversight he failed to put on his belt, and left it in his room, where he had placed it when he retired; that he did not return to his room until 10 o'clock p. m. of that day, and never missed his belt until his return; that on his return, when he undressed

for the night, he missed it; that he searched for it, and could not find it; that he suspected his landlady of having made way with or stolen it, and subsequently made efforts to find and recover it, but that such efforts were unsuccessful. The plaintiff below produced several other witnesses to corroborate his statements concerning the loss of the certificates; but the knowledge of the loss possessed by these witnesses was derived, as it seems, wholly from statements made by the plaintiff, and inferences drawn from his conduct subsequent to the alleged theft. They appear to have had no other means of knowledge. The cashier and the assistant cashier of the defendant bank testified that in the summer of 1898 a letter was received by the bank from the plaintiff, detailing the circumstances under which he had parted with the certificates, in which he said that he had been forced to sign his name on the back of the same, and that, if he had not done so, he would have been taken out and hung. They were unable to produce the letter, because, as they said, it had been mislaid, and could not be found after diligent search. The bank proved by another witness, resident in Denver, Colo., who appears to have been an old acquaintance of the plaintiff, that he had also received a letter from the plaintiff in the summer of 1898, in which he stated that he had been forced to sign or indorse the certificates on the threat of being hung, and requesting him to make that fact known to the defendant bank. The record contains other evidence from which it appears that the plaintiff was a professional gambler; that he went to Skagway for the purpose of following that occupation; that he played for high stakes, and sometimes lost and sometimes won; that during his residence in Skagway he was forced on one occasion by its citizens to leave the place on account of some transaction in which he was engaged; and that during the summer of 1898 he was for a time confined in the jail at Skagway, Alaska. The trial court was of opinion that if the certificates in question were lost or stolen in the manner related by the plaintiff, and at the time of such loss or theft were unindorsed by the payee, he might recover without tendering the bank any indemnity against the future production of the lost instruments. It accordingly instructed the jury to that effect, and the plaintiff below recovered a verdict for the full amount of the certificates and interest. The principal contention in this court is that such instruction was erroneous.

The negotiability of the certificates when they were executed and delivered by the defendant bank is not challenged by either party, and we shall accordingly assume that they were negotiable, though "payable in current funds," and that they were subject to all the rules applicable to notes and bills drawn in such form as to be negotiable by the law merchant. Neither was the question raised in the lower court, nor argued in this court, whether the remedy to recover the contents of a lost negotiable instrument, such as a note, bill, or bond, is exclusively in equity, or may be pursued at law. On behalf of the bank it is conceded, apparently, that by the modern practice a suit at law may be maintained on a lost negotiable instrument, and that courts of law in such cases have power to require a proper indemnity against the reappearance of the lost instrument; while on the part

of the defendant in error it is said, in effect, that courts of law may entertain such actions, and properly require indemnity to be given in those cases where the defendant will be exposed to a risk of loss by permitting a recovery. It is claimed, however, that in the present case the defendant bank can safely pay the certificates, because the jury have found that they were unindorsed by the payee when lost; that, in consequence of this finding, no one can ever acquire a valid title to the paper; and that a recovery was properly allowed without an indemnifying bond.

We are aware of no sufficient reason why a court, especially if it is one which is vested with jurisdiction both at law and in equity, may not require a bond of indemnity as a condition precedent to a recovery in a suit at law brought therein upon a lost negotiable instrument. Whether such an action be brought on the law or equity side, the court has the same opportunity to determine accurately whether, in view of all the circumstances attending the loss, the case is one in which the defendant would be subjected to a risk of loss or expense if compelled to pay the lost instrument, and the same opportunity to determine the amount of indemnity, if any, which should be exacted. In these days courts of law manifest a strong disposition to administer the law in accordance with those principles of justice which are recognized by courts of equity, and instances are not wanting where they have entertained defenses and enforced obligations, without express statutory authority, which at one time would have been entertained and enforced only by courts of equity. No substantial objection to such action is perceived, when a court possessed of legal and equitable powers can conveniently give effect in a legal proceeding to a well-established equitable right without harm to either party. Some courts of high reputation have heretofore entertained actions at law upon lost negotiable instruments, and have exercised the power of requiring the plaintiff to give a bond of indemnity as a condition precedent to a recovery, and some of them have maintained their right to exercise this power by reasoning that is very persuasive. Fales v. Russell, 16 Pick. 315; McGregory v. McGregory, 107 Mass. 543, 546; Bridgeford v. Manufacturing Co., 34 Conn. 546; Fisher v. Webb, 84 N. C. 44; Bank v. Benedict, 18 B. Mon. 307, 311; Robinson v. Bank, 18 Ga. 65, 110, 111. Conceding, then, that the practice of requiring indemnity in suits upon lost negotiable instruments originated with courts of chancery, which were the first to recognize a right of recovery on lost instruments, no substantial reason can be assigned at present why a court of law should not adopt the practice, and exact indemnity under the same circumstances where a court of equity would exact it.

Passing to a consideration of the principal question discussed in the briefs and at the bar, namely, whether, in view of all the facts disclosed by the record, the case is one in which the plaintiff should have been required to furnish indemnity, we observe in the first instance that, according to the plaintiff's own showing, the certificates in suit were not overdue at the time of the alleged loss, but were capable of negotiation to a bona fide holder. In the second place, the finding by the jury that the certificates were lost and never negoti-

ated, as well as the finding that when lost they had not been indorsed by the payee, rest upon fallible human testimony, which might be discredited by another jury called to determine these issues in a suit brought by a third party against the defendant bank on the certificates. It is hardly necessary to observe that the finding of the jury on the above issues in the present case would not operate as an estoppel, and would not even be admissible in evidence against a third party suing on the certificates, who was able to produce them, bearing the plaintiff's indorsement. No prudent banker, on the facts disclosed by this record, would pay the certificates voluntarily, without proper indemnity; and what a prudent man would not do voluntarily, surely a court should not compel the defendant bank to do. As between the maker of commercial paper and the payee and all subsequent holders thereof, there is an implied understanding that when payment is demanded and received the paper will be produced and surrendered as a voucher; and, although it is now well settled that this obligation is not so imperative that the payment of commercial paper cannot be enforced under any circumstances without its production and surrender, yet when this cannot be done, in consequence of its loss or destruction, reasonable security against its future appearance should be required, unless the proof that the paper has been actually destroyed is so cogent that there is practically no risk of its reappearance. One who has lost a negotiable instrument, and is unable to produce it on the day of its maturity, in accordance with the implied understanding that it shall be produced, should not be allowed to cast the burden of his misfortune upon the maker, but should be compelled to tender a reasonable indemnity. Welton v. Adams, 4 Cal. 38, 41; Gordon v. Manning, 44 Miss. 756, 762; Wade v. Banking Co., 8 Rob. 140, 142; Fales v. Russell, 16 Pick. 315, 316; Bullet v. Bank, 2 Wash. C. C. 172, 4 Fed. Cas. 647. We are accordingly of opinion that the plaintiff should have been required to indemnify the defendant bank against all further liability on the lost certificates before a judgment was entered on the verdict of the jury. As such action was not taken, the requisite security should be given before the judgment is enforced. We might allow the judgment to stand, and direct that execution thereon be withheld until such security is given by the plaintiff; but as the lien of such a judgment, especially if it existed for some time, might prove a source of considerable embarrassment to the bank, we have concluded to vacate the judgment, and allow the verdict of the jury to stand unaffected by such action. It is accordingly ordered that the judgment of the lower court in this case be, and the same is hereby, vacated and annulled, but that the verdict on which the same is based be permitted to stand unaffected by such action, and that the case be remanded to the circuit court, with directions to enter a judgment on such verdict, on the motion of any party in interest, at any time after the right of action upon such certificates of deposit shall have been barred by the statute of limitations of the state of Colorado applicable thereto, provided no action shall have been brought thereon in any court prior thereto; also, to enter a judgment on such verdict at any time hereafter when the plaintiff, or any one in his behalf, shall have executed a bond, with security satisfactory to the court, in

the penal sum of $4,500, payable to the defendant bank, and conditioned that the obligors therein, on the payment of said judgment, will hold the defendant bank harmless of and from all liability, claim, or demand which may thereafter be preferred by any owner or pretended owner of said certificates, and that they will also refund such reasonable attorney fees as may be incurred by the defendant bank in defending any action or actions which may be brought in any court upon said certificates.